Good morning everyone. Our first case today for argument is Raynard Jackson v. Dane Esser, appeal number 23-1346. Ms. Graff. Good morning, Your Honors, and may it please the Court. Carla Graff from Deckert, LLP, on behalf of Appellant Mr. Raynard Jackson. This Court should reverse and rename because the District Court committed errors of law, ignoring binding Seventh Circuit precedent and misapplying well-worn standards. But Mr. Jackson was kept in an observation cell without any running water and provided no liquids for five days. Wait a minute. Wait a minute. I'm going to stop you right there, Ms. Graff. You're not arguing to a jury. I read your whole brief regarding that point regarding the water, and I thought to myself, this man had nothing to drink for five days. I read the whole brief, and I thought, boy, that just seems extraordinary to me. And then I opened the red brief, and I saw that is a contested issue. I get it at the District Court that Mr. Esser said we made a mistake when we made the admission, and the District Judge said, you made a mistake. You're not arguing to a jury. You don't have to convince us that he had nothing to drink for five days. Your Honor, with respect to the issue of the admission under Rule 36, we maintain that the District Court made a correct decision for a number of reasons. It doesn't matter on appeal. I mean, maybe he did, maybe he didn't. But I'm saying to tell us that he, as a matter of fact, that he had nothing to drink for five days, it would be better to say the parties agreed, or the court found this. But to suggest that there's no dispute as to that issue is overstating the issue, I think. Understood, Your Honor. As Your Honor indicates, we maintain that the evidence before the jury and the evidence that Mr. Jackson put forth with related to summary judgment, both on exhaustion and the merits, indicated that he had received no water. But at bottom, Your Honors, the issues that we need to address here today are the errors of law that the District Court committed. First, the District Court erred when it granted summary judgment with respect to Mr. Jackson's 10 different administrative complaints. Mr. Jackson exhausted all administrative remedies available to him for those 10 complaints, and he put the prison on notice of all claims on which he subsequently raised in his federal lawsuit. Second, the District Court improperly weighed the evidence and overlooked a genuine dispute of material fact as to the issue of deliberate indifference with respect to Nurse Edge. Let's break up for a minute and just talk through the exhaustion issue that you raised. Yes, Your Honor. And so there were five, five, and five. Yes, Your Honor. So what's your position regarding the unanswered grievances and why that was a mistake? Your Honor, our position is that Mr. Jackson filed five additional unprocessed complaints, as you suggest. And under this court's rules with respect to exhaustion, an inmate who is deprived of any opportunity to pursue their complaints is deemed to have exhausted them and they have no ability to exhaust further. And that is exactly what happened here, Your Honors. Mr. Jackson submitted five additional complaints, and before the District Court, he submitted record evidence of those complaints in addition to a declaration in opposition to the defendant's motion for summary judgment, laying out the nature of those complaints and what he did to pursue them. This court has repeatedly held in Piles v. Noblowski, Roberts v. Was a pavy hearing required in those circumstances? An evidentiary hearing is not necessarily required, Your Honor. This court has previously held that a declaration submitted by an inmate attesting under penalty of perjury and based on their personal knowledge that they submitted a complaint that was not responded to or they attempted to pursue a complaint is enough to defeat summary judgment on exhaustion. Then what's the purpose of pavy? I'm sorry, Your Honor, what's the purpose? What's the purpose of pavy? Why would a pavy hearing ever be necessary? If a declaration is sufficient to bypass a pavy hearing, what's the difference? I mean, why would a pavy hearing ever be necessary if an inmate said, I exhausted and the prison said, no, he didn't. Why would we ever require a pavy hearing? Your Honor, that would be a matter of discretion for the District Court to determine whether further evidence would be necessary. And in previous cases, the District Court has determined that that is appropriate. But in other cases, the District Court has permitted it to go forward to trial for issues of credibility to be determined by a jury. I understand your position that the District Court did not need to have a pavy hearing. Is there a problem if we agreed with your point that there's an issue about these five unprocessed claims with remanding for a pavy hearing? Your Honor, no, we would not take issue with that. And that is our position is that at minimum, this raised a genuine dispute of material fact that required greater evidence and that the court should have given further consideration to. But even on the motion for reconsideration, the court did not give due consideration to the fact that Mr. Jackson filed these five other complaints. And there was ample evidence of that, including his those complaints or attempted to pursue them. But, Your Honors, there were five other complaints that Mr. Jackson had filed. And they were processed by the complaint, by the prison. It is entirely undisputed on appeal that Mr. Jackson exhausted the administrative remedies available and confirmed the same in writing with I.C. Ray. And all of those complaints put the prison on notice of the claims in which were subsequently raised in his lawsuit. Specifically, they addressed the conditions of his cell, the deprivation of water, and the deprivation of medical care resulting from the totality of those conditions. And this court has been clear that the purpose of the PLRA is to put the prison on notice of an issue and provide them with an opportunity to correct and investigate that issue. Specifically, the PLRA incorporates the Wisconsin D.O.C. Code here. And the D.O.C. Code that was in operation at the time only required that an inmate identify the issue that is at issue. And in Schillinger v. Kiley, this court said that that is simply putting the prison on notice of an issue for which redress is sought. And once again, that's exactly what Mr. Jackson did here. And we know that he was successful and that the purpose of the PLRA was achieved because the prison actually implemented a unit-wide policy to avoid the same situation from happening again. Where do we draw the line? Does that raise a line-drawing problem? If you look at Mr. Jackson's first grievance, his grievance was Lieutenant Dane Esser had an obligation to put my water back after he was notified on several occasions to do so. He never identifies any of the other defendants that he later sued. And your argument is that this is enough to put the prison on notice as to these other defendants. But where do we draw the line? Could he sue anybody in the prison that he wanted to that had any, you know, I mean, how detailed is it? You know, what does the prison have to do? Did it hire an outside law firm to come in and conduct an investigation to determine who had knowledge or who might have had knowledge of the water issue? And then he can sue anybody at the prison he wanted to? No, Your Honor, we do not think that it would be that expansive. Once again, turning back to the issue of notice, it's about the prison having opportunity to investigate and correct an issue. And here, we're not saying that Mr. Jackson would be able to name everyone in the prison. Well, where do you draw the line specifically in this case? In this case, it would be appropriate to look to the unit, alpha unit. He was in cell A404. He was in a clear observation cell where he was visited up to 15 times a day. And the prison had the opportunity to look at the log, look at the individuals who are required to visit Mr. Jackson who are on duty on alpha cell. And that is exactly what bears out in the record here. The prison implemented not a prison-wide reform, but a unit-wide reform. Should we or have we ever required a prisoner to say with specificity in his complaint, this particular officer in this case deprived me of order and others in his unit, or this officer and other officers known and unknown? No, Your Honor, the court should not require that, nor has it. In both Maddox v. Love and Henry v. Deschler, this court did not require that an inmate put the names of the individuals related to the issue. They found that the fact that, for example, in Henry v. Deschler, the inmate identified the wrong medication and sought redress for it was enough. The prison was then able to investigate the issue and identify those that were involved. What do we do with the guidance? We're familiar with our cases, but there's guidance from the Supreme Court, Jones v. Brock. And in that case, the Supreme Court outlined kind of the guidance for lower courts under the MLRA. And so what's your position regarding this need, as has been kind of suggested, this need to name all the defendants even before discovery? And what type of burden would that put on inmates attempting to file under the PLRA to be able to even exhaust? Your Honor, I think it's important that I'll just acknowledging the Supreme Court's direction that these requirements are to be strictly construed, but yet these are still pro se inmates. And the idea is to gatekeep, but not with extremity. And here, we have to, again, look to the Wisconsin provisions because the PLRA explicitly incorporates those state codes. And Wisconsin does not demand naming all individuals. It only demands clearly identifying the issue. And where an inmate has clearly identified the issue, and again, the prison has the opportunity to investigate and correct or determine those who might be involved, then that should be enough for an individual to seek redress for their constitutional violations. And looking at an individual like Mr. Jackson, he sought to diligently pursue the grievances. He filed 10 different complaints. He sought to confirm that they were exhausted for purposes of the PLRA. He intended to bring suit. And it shouldn't be that a prison can implement a unit-wide policy of reform, but that Mr. Jackson shouldn't be able to bring suit on that issue. The district court said that there was no indication that there was a broader reaching issue. But the fact that the prison took reform and made or implemented a new policy exactly indicating there was a broader issue belies that conclusion. I'm sorry. Go ahead. Should we move to Nurse Edge? I'm sorry, Your Honor. Should we move to Nurse Edge in the time that you have? Yes, Your Honor. I would be happy to move to Nurse Edge. Now, the district court improperly weighed the evidence as to the summary judgment on Nurse Edge and overlooked a genuine dispute of material fact as to whether she refused Mr. Jackson medical treatment. But it's entirely undisputed that Nurse Edge visited Mr. Jackson on May 27th, and he told her that he had no running water in his cell. He showed her he had no running water in his cell. She informed Lieutenant Esser, and then she did not provide any medical treatment on that day. But isn't that the end of the analysis? She informed Lieutenant Esser the water was turned on. She observed him drinking. Dehydration is treated with fluids. She was not deliberately indifferent, right? The water was turned on. In other words, she treated him. No, Your Honor. The fact that Nurse Edge was aware that he had no running water for five days at that point, as a nurse, as a matter of common sense, it might require additional treatment. And he specifically asked for additional treatment as he testified. And that's negligence. How is that not negligence? Your Honor, that's an issue for the jury to decide. Wait, wait, wait. An issue for the jury to decide whether it's negligence or whether it's deliberate indifference? Whether her mental state was sufficient for that. As this court held in Conley versus Birch, White versus Woods, Sherrod versus Lingle, the issue of deliberate indifference and the mental state required under the Eighth Amendment is an issue more appropriately reserved for trial for the jury to be able to hear all of the evidence and testimony and determine whether her conduct amounted to deliberate indifference. And that's exactly the situation we have here. The district court was faced with the conduct that we have in front of us. What raises it to the level of deliberate indifference? The fact, Your Honor— For it to survive summary judgment. Your Honor, it's the fact that Mr. Jackson said he requested medical treatment and he was denied medical treatment. Ms. Nurse Edge attempted to provide medical treatment and he refused. Is that correct? Your Honor, that is not the position that Mr. Jackson maintains. He specifically said he did not want treatment for his chest pains, but he requested treatment for his deprivation of water and his dehydration. Did Nurse Edge attempt to provide that treatment? Mr. Jackson maintains that she did not. While Nurse Edge does, that's exactly the issue of the summary judgment where the district court erred. The district court should not have weighed the competing testimony of these two parties or drawn all inferences against Mr. Jackson as the non-moving. Rather, the district court should have taken Mr. Jackson's testimony as enough to defeat summary judgment. In Payne v. Pauley, this court— I thought he did agree in the record that she attempted to provide medical treatment and he refused the first time. Again, Your Honor, that's that he refused. He did not want treatment for chest pains. He specifically wanted treatment for the deprivation of water and the dehydration. Again, that's enough to defeat summary judgment. This court has repeatedly said, for example, in Payne v. Pauley, that an individual's own recollection of the events based on their personal knowledge is enough to defeat summary judgment. We cannot look at it and say that it is self-serving. The fact that one individual has made a claim for or indicated that this is their knowledge of the events, that is enough to defeat summary judgment. And, therefore, this case should have gone to trial on the issue of summary judgment and the merits of whether Nurse Edge acted with deliberate indifference. Your Honors, I see I have two minutes left and I would just like to turn briefly to the issues of the motions in Limine. The district court erred in ruling in favor of ESSER on three different motions in Limine and in doing so, it applied abrogated standards related to character evidence that ultimately prejudiced Mr. Jackson's case before the jury. Can we just focus on the hunger strikes? Yes, Your Honor. As to the hunger strikes, first and foremost, the district court committed an error of law and a per se error of law warrants reversal and abuse of discretion. The district court did not apply the evidence of the hunger strike for any purpose other than the most forbidden inference under Rule 404B. It said it was admitting that evidence for the purpose of showing that Mr. Jackson was, quote, a very difficult inmate to control and fights back. That is, by its very definition, character evidence and a propensity to act in accordance with that character. Doing so is exceptionally prejudicial to Mr. Jackson's case because it permitted the jury to infer that he might have refused water or chose to forgo water even though it was admitted at the time at trial and before the district court judge that Mr. Jackson had no access to water. Once again, this was an error of law and the blatant application of Rule 404B that was improper. As to the other motions in Limine, however, Your Honor, the district court committed other errors of law. Again, these are per se abuses of discretion that warrant reversal. As to Lindsay, the court applied the incorrect four-part test that this court has since reversed in United States v. Gomez. It rigidly applied that test to the detriment of Mr. Jackson's case. How would Lindsay have helped Mr. Jackson? Lindsay Esser was found not to have acted indifferently, deliberately indifferent. Your Honor, I see I'm about to expire my time, but if I may respond to your question. With respect to Lindsay, even though the district court in that case did not, there was no finding of liability, that's still probative evidence of the fact that there was a lawsuit raised against the same defendant involving the same exact conduct. That would show absence of mistake or knowledge of a particular issue. But the district court in applying that abrogated test under Zapata rather than Gomez rigidly adhered to the requirements of similarity, which this court has said is not a strong indication of relevance under Rule 404B. Your Honors, my time has expired. For the reasons set forth in our briefs, we respectfully request this court reverse and remand and issue a new trial on all claims. Thank you. Okay, thank you. My name is Mike Murphy. I represent the defendant's FLEs in this case, which is an appeal from a jury trial where the plaintiff was represented by counsel. I feel like it might be most helpful to go straight to exhaustion, if that's okay. There is no record-based argument of 10 complaints here. There's just not. When I went to the reply, on page four of the reply, there's a bullet point list of five and then five, which when I flipped to that page, I thought for a moment was pretty compelling. Look at the record sites for that. The first five site to the plaintiff's exhibit showing the five inmate complaints that were filed. The second is to the plaintiff's. I think my concern is more so with the responses from Ms. Frey. And at the top of one of those responses in June, I think it's June 4th, where Mr. Jackson says or writes at the top of the grievance, confusing, stop confiscating my five complaints. Yeah. I really like to address that. So the idea of compensation came up below when the plaintiff was contesting dismissal for exhaustion. It's records numbers 46 and 47. Jackson believed that there was a requirement that he get a response, like a receipt, an affirmation within five business days. I don't think that's the requirement. That's not an issue here. But when five days passed after he submitted his five complaints and he hadn't heard back, he started saying, you've confiscated my five complaints. Stop confiscating them. You have to process them. They weren't confiscated. They just weren't processed yet. But those are the five. Those are the same five that the defendant submitted into the record. They're the same five that Mr. Jackson referenced in his affidavits. Mr. Murphy, though, you're making arguments that may be compelling, but are you arguing to the way I read the summary judgment orders here, it seems to me that the district judge granted summary judgment and then Mr. Jackson proceeding pro se filed a motion for reconsideration with the district court and said, judge, you misunderstood my argument and my declaration. I'm not complaining about five grievances. I'm complaining about 10. And then in one page in the order denying reconsideration, the judge addresses those other five and says it's frivolous and cites some reasons for which they're frivolous. But when I look at the record, the reasoning does not necessarily track the record as to why those five unfiled or unprocessed grievance, whatever they are. It just seems like you're asking us to make evidentiary determinations that would be better served by having the district court determine at a And Mr. Jackson can testify and Ray can testify and the judge can make credibility determinations and then it's the end of it or not. But let me ask you a question. If it goes back for a pay to hearing and the judge determines that those claims were processed, does Mr. Jackson have a estoppel issue or problem on the water claim and the singling out claim? In other words, there's already been a trial on those claims and the jury found for the defendant. Should there be another trial against additional defendants? At least when Mr. Jackson's theory seemed to be, it was Dane Esser that committed the constitutional violation. Others may have been aware of it and it was, I think he said in his closing argument, it may have been negligence on their part, but it didn't amount to a constitutional violation. Isn't that the end of it? End of the matter as to those defendants on the water claim and the 14th Amendment claim? Yes. I think two points to make there. For one, it is important thinking about exhaustion and what was said or not that this matter went to a jury trial. That this was not, those matters, those core issues, the core issue here about was water on or off, when it was on or off, who knew, who turned it on or didn't turn back on, was decided by a jury trial and that doesn't need to be decided again. I thought the jury decided whether or not Esser turned the water off or not. Did it make the determination that the water and the observation cell was not on or not off? That it was not off. No, it did not. I think the arguments made to the jury were pretty broad. I think the question there was whether Esser was deliberately indifferent and it was a three-day trial, so things were brought up about it being shut off, things were brought up about when it was turned back on and what happened when it was turned on, but the finding there was that Esser was not deliberately indifferent with regard to those theories. With regard to exhaustion, I don't think the record, including the motion for reconsideration, has enough in it to warrant an evidentiary hearing. I think the judge was right. I don't think that at any point Jackson articulates— Is that our standard, though? He has submitted a declaration where he says, I submitted these grievances, they're missing, they haven't been processed, and we've said the exact opposite of what the district court said, which is the content, whether there's any evidence in the record of the content, all of that's irrelevant. If there's a question about whether there's been exhaustion, the judge should look into it and have an evidentiary hearing. Yeah. I don't think the record reflects an argument at that stage, going back in time to what the district court had in front of it, not what has been argued very compellingly here. I don't think there was an argument of ten. I don't think there was. I think the district court was looking at an argument of five. He said that the five were confiscated. They were not processed. What do you make of Mr. Jackson's declaration? This was the defendant's motion for summary judgment. I don't believe he identifies ten. If I'm thinking in the right place, I can picture this page of this declaration, where at the bottom of a page he lists, I've got these inmate complaints, and he's got the numbers, and four of them match the five that are in the defendant's evidence. Then starting on the next page, he begins to describe them, and he describes five, and they're the same five. I don't think that there was anything that the district court was working with to say, we have a dispute that ten was filed. I think that what was going on in district court was there were five filed. Were they broad enough to exhaust all the claims, yes or no? Were they properly processed? Were they confiscated? Were they administratively exhausted, how they should have been? Jackson said they were not. They ultimately were. The defendants have said they were all administratively exhausted. All I can say is I've read those pages a number of times, and going back in time, looking at what the district court had in front of him, I don't think there was a dispute that warranted a hearing at that point. I can move on to Edge, if that would be helpful. On Edge, I think where the difference in reading the briefs, I think where the difference lies is the plaintiff is saying on appeal that there was a dispute of fact, that there were different stories as to what happened at his cell front on that day. So let's really go back for a moment as to what the district judge was on notice. I pulled up the response that Mr. Jackson filed in regards to the exhaustion issue and items one, two, and three. Jackson lays out that the feces being smeared, the chemical agents at item two, and he goes through, these are my other five grievances, which the prison did not answer. And he does that on page three and four. Yeah. So happy to address that, because that is argument about how much the five that he filed did capture. And that point in particular, so the first one that he filed, I've got it at 43-2 of the record. He's got on top a brief summary, and it says Captain Brown erroneously utilized chemical agents on, and then it's redacted, but the person who was in the cell prior, who was contraindicated. So there's a complaint there about chemical agents being utilized on that other person who Jackson says was contraindicated. Then he goes on to his issue. So what that briefing back and forth about, was that enough to preserve his claim of chemical because if we look at his brief that was filed, he provides a heading and he says, these are the submissions of grievances regarding the following. And then in the portion that I'm trying to direct you to, in his brief, he puts headline D, and he says the following grievances regarding health and personal safety. So I believe what Mr. Jackson is trying to do is to highlight the first five would have to go in line with the two per week. The other five that I filed involving health and safety under heading D, 1, 2, 3, 4, 5. And so the question being, why would there not have necessarily have need to have been a PAVI hearing here when he outlines the first five sets under heading C and then the new set under heading D? Yeah. So again, I think I can picture the pages you're talking about. I'm not totally sure. But going back in time to what the district court had then, not what has been developed since, I don't think it even facially describes 10. He says repeatedly in those pages, my five, the five that I filed. And the five in those lists where he says my personal safety, aligned to the arguments of the five that everyone was looking at, the same five. So the chemical, just the example that we were going through, him arguing that that first one involves chemical spray is because he talked about chemical spray against the prior person. And he's saying, well, that's broad enough to apply to me. And the arguments that he makes of those five match the five that everyone is talking about. I don't think the district court had any reason to think. I don't think there's a reason to think now that we're talking about 10 ever. It's just a characterization of the five. With regard to Nurse Edge, I think the point has been made in the briefs and this morning that there is a difference. There's a factual dispute about maybe exactly what happened at that cell front. My point is that it's not material and that Edge was properly dismissed on summary judgment no matter what version of the facts you're looking at. And where I think the rubber hits the road on that is Jackson's deposition transcript. It's filed at both record 121 and 162. The relevant section starts at page 26, but I think page 30 is really where the core of it is. And at that point, again, looking at that snapshot in time at summary judgment, the defendant's position was Jackson refused treatment. Edge was there trying to treat, and he said, get away from me. I'm not. I don't want to be treated. Go away. Jackson's position was that Nurse Edge was there, said he needed to be treated, said he might be dehydrated, said come over. I need you to be looked at. But Esser refused to allow that to happen, and Esser erroneously said that he had declined medical care. That, I suppose, is a difference, but it's not material as to the dismissal of Nurse Edge. Under either event, she was there attempting to treat and was unable to. The dispute there doesn't matter for whether she should be dismissed at summary judgment or not, and she was correctly dismissed. What if the allegation is, as we heard this morning, not that she wouldn't treat at all, she wouldn't treat for the dehydration? Yeah. The plaintiff's own testimony on page 30 there just doesn't make that distinction. Can you say it one more time? The plaintiff's own testimony on page 30 just doesn't make that distinction. And so what the judge had there was, yes, two versions. The defendant saying that he affirmatively refused care. Jackson saying that Edge tried to treat him, but Esser prevented it. Neither show any disorder of deliberate indifference by Edge. And so even though there's a dispute, it wasn't material, and she was correctly dismissed. Why was it proper for the district court to admit the evidence of the hunger strikes? The hunger strike was properly admissible for three reasons. First, that Nurse Edge personally had observed Jackson at a time when he hadn't been eating. So when she examined him from the cell front the best she could, she had a really good basis to know whether he's experiencing a medical emergency or not. Second, there are protocols in place. Wouldn't she have that just based on her knowledge as a nurse, without regard to whether she saw him before, not eating or not drinking? Is that testimony necessary for that? Proposition? The point that you just made could have been made without that. It is stronger with that, and that made it material and relevant and admissible. Okay, you can move on to the second reason. Second reason is that there are protocols in place that the prison and medical staff takes, including for Jackson in the past, when he's not eating or drinking. And it is evidence of how they would have acted if they had known. Couldn't they have testified about the protocols independently? Yes. Okay, and so can you just get straight to the reason that the district court gave for admitting the evidence? Yeah, so the district court talked about this as part of the tableau of things that were relevant in the case, including Jackson's past efforts and methods of manipulating staff. And he made one phrase in passing during a pre-trial conference that has really been highlighted by the appellants, and I understand why. But that was not in front of the jury. It was not the reason for which the evidence was used in front of the jury. I do think it was a sound reason anyway. That sound bite that has been pulled out of those pre-trial transcripts was not in front of the jury, and really this evidence was highly limited at the jury. My question, I guess, was that sound bite using your words appropriate, Dr. Gomez? It was not reversible error. It is maybe not how it could have been stated. It was not reversible error. That's my position on that. I see that my time is up. I respectfully request that the decision of the jury trial be approved. Thank you. Okay, thank you, counsel. The case will be taken under advisement.